This case raises two issues. It gives a new meaning to the word expedited, and like the previous case, how did the immigration judge make a credibility finding without looking at the evidence? This is a similar issue of the — MS. GONZALES Well, this is very different, because there was a hearing, and he did tell a story, and the only issue was that the immigration judge who made the credibility finding wasn't physically present in the interview. Right? MR. SINGH v. GONZALES I'm sorry. I didn't hear the last — MS. GONZALES The only difference — I mean, here, there was a hearing, and he did get to tell the story, and the problem was some strange glitch where the original immigration judge just never decided the case, and then another immigration judge listened to the tape, but it's not that he didn't get to tell the story. MR. SINGH v. GONZALES That is correct. MS. GONZALES And besides which, how do you really challenge the judgment on that ground or the decision? I mean, you don't really make a whole lot out of the fact that the immigration judge wasn't there. You don't really raise a due process argument or anything like that. MR. SINGH v. GONZALES I don't raise a due process argument. I raise the argument that the judge who listened to the tape stated she was going to have a de novo hearing, then said she wasn't going to have a de novo hearing, and then misstated the facts when she listened to the tapes. MS. GONZALES But in the end, that's — so you're not really saying that there's something inherently wrong with a credibility determination by a judge who isn't physically present? MR. SINGH v. GONZALES No. Sometimes there are de novo fact-finding hearings that are made on the record. Ten years later from the day when an individual filed his case, I have never seen that challenge. But if there is a — MR. SINGH v. GONZALES I haven't seen one. We make de novo determinations in summary judgment cases every day based on a record. MR. SINGH v. GONZALES I'm talking of credibility findings, the judgment of credibility finding without listening to the evidence. MS. GONZALES No. MR. SINGH v. GONZALES She listened to a tape and misstated what the tape said. MS. GONZALES So the misstatement's the problem, and that's the problem. So let's talk about  MR. SINGH v. GONZALES Right. The misstatements don't — unfortunately, the judge — there's only one hearing, and that's the hearing of April 97. And in that hearing, my client testified he came and he fled India, and there's objective facts to it that in the state of Punjab in India, there was major violence and a brutal civil war occurring. I want to get to the point on this, on the credibility.  MR. SINGH v. GONZALES There are three things that really caught my attention. MR. SINGH v. GONZALES Thank you. MR. SINGH v. GONZALES Let me address you on what those are, and then you explain to me why they're not a sufficient basis, a substantial basis on the record as a whole for the IJ's determination. One is that Singh knows nothing about the AISSF or its political affairs or the politics of India or elections, didn't know or care about the elections. The second is, one time he says that one cop held his hands while another one slapped him, and another time he says he was beaten with a bamboo stick and a leather strap. Big difference. And the third thing is, even after he'd been in the U.S. for a while and had no longer had to fear what Indian police would do, he still didn't have a beard or a turban, as you would think involved in AISSF affairs to have. MR. SINGH v. GONZALES I'll address the last first. Thank you very much, John, for raising those issues. The beard issue is basically a red herring. He said he fled India because he had to cut his hair and go through Nepal, and once he came here he felt safe and he grew his hair. He had his hair and his beard since birth, and since then he was wearing a turban. That's absolutely, completely an incorrect statement on the part of the IJ to raise that as an issue. It isn't an issue. He felt safe once he came into this country to basically grow back his beard. Insofar as the cops, there is no testimony of what you stated in the record on his April 97 hearing where he misstated what the police stated. You may be reading what was stated in his application filed in 92. MR. SINGH v. GONZALES What about his not having a beard? What was your answer on that? MR. SINGH v. GONZALES My answer on that was once he came to the United States he grew  MR. SINGH v. GONZALES He did, but he didn't have it in front of the IJ. MR. SINGH v. GONZALES He did, Your Honor. MR. SINGH v. GONZALES The IJ says he doesn't. MR. SINGH v. GONZALES The IJ, which I might be mistaken. I'm talking about the 97 hearing. He did have it. In 2002, he did have it. The issue was when he came and he filed his application, he didn't have it. MR. SINGH v. GONZALES And how long was that after he arrived? MR. SINGH v. GONZALES Immediately. He came into this country in July 92. He fled in January or February of 92. He filed his application in December of 92 and he had a beard at that time. The only reason he cut his hair and his beard was basically he had to go through various countries to get here, starting from Nepal. MR. SINGH v. GONZALES I'm sorry. I don't want to get that clear on my mind. MR. SINGH v. GONZALES Right. MR. SINGH v. GONZALES I have a second answer. MR. SINGH v. GONZALES I was trying to deal with the issue of the police. I forgot what the first and the third one was, but there was no inconsistency in his statements on his April hearing of 97. He said he had a political – oh, you asked why he didn't know about the politics in Punjab. He stated basically, Your Honor, he was a young man who was involved with the ASSF primarily because of police brutality and helping individuals who had been killed by the Indian police. That was the extent of his work and demanding an independent homeland, Khalistan. MR. SINGH v. GONZALES I have a slightly different problem. It's maybe a little beside the point, but it seems to me that the story that he told at the hearing, unlike the story that he told in his asylum, aside from there not being consistent in the asylum interview, the story he told at the hearing, why would that even amount to persecution? I wonder if it's gotten to that issue, but it seems to me what he said was he was arrested for a day and he was slapped once. What he stated was that he had been detained for one night, at which time the police came to his house, singled him out, took him from his house, threatened to kill him while he was detained. He specifically said, they said they will kill me. There's no dispute about that. And once the Indian Punjab police says they will kill you, they will kill you. And this is basically within the context of an incarcerated area in an Indian police. MS. GONZALES And you think it's not the slapping, it's the threat? MR. SINGH It's the threat coupled with the violence. I believe this circuit has stated you have to look at the total. Excuse me. MR. GONZALES The slap, you mean? MR. SINGH Well, I'm not trying to downgrade the slap. I think the word was beating. MS. GONZALES No, it wasn't. MR. SINGH He was hit, his hands were tied. MR. GONZALES I was slapped, and that's a big difference. MR. SINGH The testimony of what happened next in the other room wasn't brought out at the hearing. His attorney didn't ask him. MS. GONZALES It wasn't brought out. It's not in the record. We don't have it. MR. SINGH Right. But it's in his application. And we just barely had that he was slapped, interrogated, asked names, and threatened to be killed. MR. GONZALES Before you run out of time, there's something I need to ask you. MR. SINGH Thank you. MR. SINGH I may have misheard or misunderstood you. I thought you said, in answer to my question a moment ago, he had a beard in December 1992 when he filed. And then I look at pages 73 and 74 of the administrative record, question, okay, well, when you applied for asylum, when you filed your asylum application, you had short hair and you were clean-shaven. Is that correct? The answer is yes, because the person who got me on board, he told me, if you have to go to America, then you have to change your name. You're going to have to change your beard. So I'm gathering from that that what the record shows is that when he filed, he did not have a beard. MR. GONZALES If you kept reading on the same page on the line, the 11th says, well, after about six months after when I had come here and applied, after that I started growing my beard. MR. SINGH After he had applied. MR. GONZALES He was getting facial hair. He's stating once he came here, he felt safe. MR. SINGH He says six months after getting here, he started growing his beard. Not that it took him six months to get a beard. MR. GONZALES I agree with you. Does that mean basically he's not a Sikh? What does that mean? I mean, I don't get the relevancy of that. Let's say he doesn't have a beard. I think the inference that the IJ appeared to be drawing from it is that he is not very intense about being a Sikh. However his birth may be, he's not an observant Sikh. MR. SINGH Well, I think that's an incorrect statement. I think that's an incorrect statement, Your Honor, not by your behalf on what the judge was inferring, because the judge didn't make a credibility finding. The judge didn't come to any kind of credibility finding who heard this hearing. And if we assume that's what he was implying and the implication is just because an individual doesn't have a beard doesn't make him into a Sikh or doesn't make him an individual who is demanding an independent homeland is a wrong syllogism. But getting back to the politics, that was the other question you had raised, that he never knew what was happening in this country once he fled. The issue was he was concerned and what Judge Burns raised was what happened to him does show past persecution, Your Honor. And it does show also well-founded fear, because the police did come back later looking for him. JUDGE LEBEN I'm still back on what you said a moment ago. MR. SINGH Yes. JUDGE LEBEN If a man tells me he's a Jew or a Muslim while he eats a ham sandwich, I don't have any problem with that as long as he doesn't tell me I'm an intensely religious Orthodox Jew or a Muslim. MR. SINGH He never said he was a baptized Sikh, Your Honor. JUDGE LEBEN If he tells me that, then I know it's not true. MR. SINGH That is true. JUDGE LEBEN And I'm thinking the beard on the Sikh, no problem at all. A man's name is Singh. He has a beard. He doesn't have a beard. People are free to have whatever level of observance they want in the United States. But if he says this was a really big part of my life, so much so that I was part of the AISSF, then I have more of a problem. MR. SINGH He was 16, 17 when he joined, Your Honor. As to his beard, you have a problem that as a member, why he never had a beard. He did have a beard. He cut his beard when he came to this country because he was smuggled through various countries. That's the issue. He has never said he was a baptized Sikh. JUDGE LEBEN Why did he, as soon as he got safely to American shores, quit shaving? MR. SINGH He was still clean shaven. And then he grew his beard and his hair back, and he's always had that. At all his hearings, he had that. He's able to maintain that. But does that mean by having a beard and a turban, you are a militant Sikh? And I think that's not correct. It doesn't mean anything. It's within your beliefs inside you that matter. And there is no expert testimony over that. Excuse me? MR. SINGH Now I understand. Thank you. I'm over my time. Thank you. MR. GATES Clearly, this case is not a typical asylum case. The length of time that it took between the hearings, the problems that occurred, one I.J. hearing the case and saying he would promptly, within two or three weeks, render decision, and then he didn't, and the files being lost when the office moved from one locale to the other. However, what we are left with is a situation where there's adverse credibility finding. And in this case, the immigration judge, once again, did not think that the alien made his case based on the discrepancies, the inconsistencies that were listed. Now, it does not mean that an alien under these circumstances can never establish a case for asylum. But it is reasonable for an immigration judge to make the finding that you haven't made your case, because I don't know, once again, whether or not I can believe that what you indicate happened to you in your native land really happened. There were the different accounts of what happened after he was arrested. He was only arrested once, the second time in 1992, January of 1992. And we're talking about incidents that took place over 14 years ago. And the remoteness in time diminishes the efficacy of his claim of a continuing well-founded fear of persecution. And that's not pertinent at this point. We're not anywhere near that at this juncture. However, we are looking at the inconsistencies in his story. He says one thing in the asylum application and another thing during his testimony. And as to what? As to the beating? Yes. At one point in his asylum application, in the attachment, he indicated that he was on mercy. And then when he testified, the only thing he said was somebody held his hand and he was slapped. The immigration judge noted that as different accounts from your asylum application to your testimony. And also the immigration judge was particularly concerned with the fact that he claimed to be this militant Sikh who joined the All-India Sikh Student Federation and that he is advocating for an independent Khalistan. And yet he knew nothing about the elections that had taken place a year or two later. And the fact that the Sikh party, the Acolyte Dal, had won many seats in the parliament. And he didn't seem to have any interest in the things that were going on in his native homeland. And if he was this militant Sikh that he claimed that he was, this is not inconstant with the posture of someone who claims to be what he, that he is this person who is being sought by the police in India because they are seeking to persecute him. There were two minor incidents, one arrest in detention and one instance in which he said he and this other person were handing out leaflets. They stopped the other person and he ran away. Those are the only two things that happened in November 1991 and February of 92. Yes. The first time at the Master Calvary hearing, there was no translator. And the judge who was in, Judge O'Hara, tried to find a Punjabi interpreter and couldn't. So he said it for the next day, next week. The only reason that bothers me is because it's so difficult in these cases because we're so used to hanging on the nuances of the English language. And here the transcript says one of them slapped me, but we don't really know what he said exactly in terms of slap. It's difficult. I mean, because I tend to regard this as, you know, perhaps quite possibly inconsistent with the asylum interview. But then I think... Well, as I recall from the transcript, I only recall one instance in which the interpreter had a problem with a specific interpretation of... No, I understand that. All I'm saying is slapped is a nuanced word and exactly what he said would matter. And we never know these things in these cases. It's odd. Well, if there was something more severe, I would think you'd be able to describe it a little better than that if you were really beaten. There's a big difference between being slapped and being beaten. Well, he did say just before that, what did they do to you, sir? They beat me up. How did they do that? There were two of them. The policemen came. They, officers, they forced me to help off with their hands. And then one of them slapped me. Well, I don't think he carried his burden of establishing exactly what happened to him that it rose to the level of persecution. In India, the country reports clearly state that there is police abuse, regardless of, you know, what your political opinions are or your religious beliefs. There is the Indian police overreact and they are abusive to all people in India. Is this Mr. Frost that you referred to? Was that the government's lawyer or the defense lawyer? The defense lawyer. I noticed that what he said in that part of the transcript, he said they tried to use scare tactics. And then when the lawyer brought out exactly what they did, that's that portion that Judge Berzon just referred to. And then when it comes to what happened in the other room, the defense lawyer, Mr. Frost, doesn't ask. And of course, that would have been the time to bring out what happened in the other room or if he was taken to the other room. Did it come out at any other time? No, no, it didn't. And the governor would maintain that Mr. Singh had the burden to present all the evidence he could. Of course he had the burden. And I was wondering whether it came out any time. I mean, was it just scare tactics or did they actually take him to the other room and beat him up? Later in the testimony, when he's being cross-examined, as I recall, he indicated that he was taken to another room and there was no follow-up later during cross-examination. It's difficult to keep up with the number of defense attorneys. It seems like at every continued hearing, there was a different attorney representing Mr. Singh. So is the rule that – I mean, this isn't exactly inconsistent, there's just a hole in the testimony. But I gather that it's the oral testimony that controls, that the decision is made on. So if something's not in it, the fact that it's in the application, can he rely on what's in the application? You can explain the discrepancies, and he had full opportunity to explain to the immigration judge's satisfaction. I gather that he can't now rely on what was in the application as meeting his burden if he didn't say it. I mean, is that basically – if it's not in the hearing, it doesn't exist, is that right? No, no. If it's – the application, the written evidence is considered also by the trier. In fact, that's there. The problem here is we had testimony that's inconsistent with the – But it's not inconsistent. I mean, I thought you were going to say no. If the answer is yes, it's not inconsistent. He does talk about going to the other room, and he just never says what happened there. So what's inconsistent there? Well, let's say one is not as detailed as the other, and the lack of detail, there's a difference. He doesn't ask. And maybe he was relying on his application. I mean, I actually thought the answer was going to be – and I thought the answer was that he has to put on his face after the hearing. But if that's not true, if he can rely on the written documentation, then I don't see the inconsistency. If you say that you were beaten in your application, and you specifically described acts of being beaten with a wooden stick and – And what he said in his oral testimony was he just – he did talk about going to the other room, and then he stopped. So it – it doesn't seem inconsistent to me. Now, I was not aware that he could simply rely on something that was in writing and that he didn't present at the hearing. But if he can't – The hearing is the opportunity to present your case. He had a lawyer there, right? Frost is his lawyer. Yes. He had a lawyer at each of the hearings. So he's in somewhat the situation of the plaintiff who says in his complaint, I suffered broken bones, and then when he gets on the witness stand, his lawyer never brings out evidence of his broken bones. And then the defense lawyer says he must have been lying in his complaint. If – if there are – if there are not inherent inconsistencies in the statement, that's one thing. But if you say during – in your written statement that I was beaten with this wooden stick that's laughing, and yet then you have the opportunity to – to bring out your story during your testimony, and you – I believe that is an inconsistency in direct response to Judge Broussard. So a point, I believe that it is an inconsistency if you're saying that you were beaten with a wooden stick and then now you were just slapped and taken to another room and nothing further happened. Thank you, Counselor. Senator Gonzales is submitted.
judges: Noonan, Kleinfeld, Berzon